711 P.2d 633

**Laura S. ROLLINS, an unmarried woman, Plaintiff/Appellant,**

v.

**Michael J. VIDMAR, an unmarried man, Defendant/Appellee.**

**No. 2 CA–CIV 5417.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 2, 1985.

Review Denied Dec. 17, 1985.

Rubin & Myers by Scott E. Myers, Tucson, for plaintiff/appellant.

Mesch, Clark & Rothschild, P.C. by J. Emery Barker, Tucson, for defendant/appellee.

## OPINION

HATHAWAY, Presiding Judge.

Whether the trial court erred in dismissing plaintiff's contract claim against defendant for lack of personal jurisdiction is the issue presented on this appeal. We find that it did and reverse.

Plaintiff, Laura S. Rollins, is the mother of defendant, Margo Vidmar, former wife of defendant/appellee Michael J. Vidmar. Rollins is a resident of Arizona and the Vidmars are residents of California. In September of 1981, while the Vidmars were still married, Rollins, while visiting relatives in Illinois, received a phone call from her daughter, Margo, requesting money to assist the Vidmars in purchasing a residence in California. A few days later Rollins withdrew $10,000 from her savings in Tucson and mailed it to the Vidmars in California to be used for earnest money. In November Rollins withdrew and mailed an additional $63,959 to the Vidmars. The parties disagree as to whether the funds were a loan or a gift. In 1982, Rollins received payments of $200 in June, July, August and October, by mail from her daughter in California. The payments were received by Rollins in Arizona.

The Vidmar's dissolution went to trial in Orange County, California. Rollins testified that the money was a loan and not a gift. The trial court found, in keeping with the general presumption in California, that absent a written loan agreement the transaction would be construed as a gift. Rollins thereafter brought this contract action in Arizona. At the time of the hearing on the motion to dismiss, a final decree had not been entered in the dissolution.

The issue on appeal is whether plaintiff has met her burden to show that Arizona courts can assume in personàm jurisdiction without offending traditional due process notions of fair play. The sub-issues are:

1. Did defendant cause an event to occur in Arizona out of which the claim arose?

2. If the answer to the first question is in the affirmative, did defendant have sufficient minimum contacts with Arizona to justify the assumption by an Arizona court of personal jurisdiction?

## I.

### Did defendant cause an event to occur in Arizona?

In reviewing the motion to dismiss we accept all material facts alleged by the non-movant as true. *G.T. Helicoptors, Inc. v. Helicoptors, Ltd.*, 135 Ariz. 380, 661 P.2d 230 (App.1983). Accordingly, it appears from testimony by plaintiff and her daughter that plaintiff, responding to a request by her daughter for a loan, withdrew the funds from her savings in Arizona and mailed them to California for use by her daughter and son-in-law to purchase a residence. That the initial call was to plaintiff while she was visiting in Illinois is of no moment. It is undisputed that her residence is Arizona and it was recognized that the funds were to be withdrawn by the appellant while in Arizona and sent to defendants in California. We believe that the contract "out of which the claim ... arose", Rule 4(e)(2), Rules of Civil Procedure, 16 A.R.S., was made in Arizona, and the Arizona long-arm statute applies. Cf. *Meyers v. Hamilton Corporation*, 143 Ariz. 249, 693 P.2d 904 (1984), holding that advertisements by the defendant and the payment of money by the plaintiff and the delivery of tickets in Arizona was of sufficient "quality" to confer jurisdiction on the Arizona courts. The money was solicited from plaintiff, an Arizona resident; it came

from Arizona, and repayment was being made to plaintiff in Arizona.

## II.
### Minimum contacts.

The long-arm statute having been satisfied, plaintiff must also show that the defendant had sufficient contacts with Arizona that the maintenance of the suit in this state does not offend traditional notions of fair play and substantial justice. *Meyers v. Hamilton Corporation,* supra. The debt incurred at appellee's daughter's solicitation is a community obligation. Under the relevant California statute in effect at the time of this transaction, the community is liable for all debts contracted for by either spouse during marriage. The former California Civil Code, § 5116, states "the property of the community is liable for the contracts of either spouse which are made after marriage."[1] Appellee argues that § 5116 does not apply because he was unaware that his wife had acquired money for the house from her mother. Assuming what he says is accurate does not alter the result. In *Mitchell v. American Reserve Insurance Company,* 167 Cal.Rptr. 760, 110 Cal.App.3d 220 (1980), the court held § 5116 includes debts of which the other spouse has no knowledge.

Appellant also argues that even if he is liable for the debt under the community property statute, he is not by virtue thereof also subject to jurisdiction under Rule 4(e)(2). That argument was rejected by a Washington court in *Barer v. Goldberg,* 20 Wash.App. 472, 582 P.2d 868 (1978). The facts in that case are analogous to the present one. Alan Goldberg, a California resident, solicited a loan from his in-laws who were Washington residents. His in-laws later sued Alan for default. Alan's ex-wife, Janice, a California resident, was also brought into the cause via Washington's long-arm statute. RCW 4.28.185. Janice contested the applicability of the statute on the same ground it is now being contested. The court stated:

"As we see it, the critical question to be answered is whether the *community* had sufficient contact with the State of Washington in connection with this transaction so that the primary plaintiffs, the Barers, could have maintained their action against the Goldbergs in this state by aid of the long-arm statute. We think the answer must be yes." 582 P.2d at 872 (Emphasis in original).

Dicta in *Magidon v. Coronado Cattle Company,* 19 Ariz.App. 38, 504 P.2d 961 (1972), is in accord with the *Barer* decision. We hold, therefore, that appellee may be subject to Rule 4(e)(2) by virtue of his membership in the marital community. If the legislature chooses to modify the duties and responsibilities that flow from that relationship, that, of course, is its prerogative.

When long-arm jurisdiction is challenged by a non-resident defendant, the party asserting jurisdiction has the burden of establishing it. *Holmes Tuttle Broadway Ford v. Concrete Pumping, Incorporated,* 131 Ariz. 232, 639 P.2d 1057 (App. 1981). When reviewing the grant of a motion to dismiss for lack of personal jurisdiction over a non-resident defendant, the reviewing court looks at the pleadings and affidavit in support of and in opposition to the motion. *Manufacturers' Lease Plans, Inc. v. Alverson Draughon College,* 115 Ariz. 358, 565 P.2d 864 (1977); *Holmes Tuttle Broadway Ford v. Concrete Pumping, Incorporated,* supra.

The facts relevant to this appeal as revealed by pleadings and affidavits show plaintiff's daughter, at the behest of the community comprised of herself and defendant/appellee, solicited the loan from plaintiff, an Arizona resident. The source for the solicited funds was plaintiff's account in a money market fund. For the

---

1. Civil Code § 5116 was repealed in 1984 and replaced by Civil Code § 5120.110(a). § 5120.-110(a) states "... the community property is liable for a debt incurred by either spouse before or during marriage ... regardless whether one or both spouses are parties to the debt." The new statute does not alter the above result.

funds to become available to defendants, plaintiff needed to withdraw them in Arizona and transmit them to defendants. Reasonable notice follows from the transaction that if litigation became necessary to recover the loan funds, it could well be expected to take place in Arizona. Thus, defendants having purposely availed themselves of the privileges of conducting activities within Arizona, invoked the benefits and protections of its laws. Indeed, some repayments to plaintiff in Arizona had been made. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). We find that minimum contacts exist. Cf. *Holmes Tuttle Broadway Ford, Inc. v. Concrete Pumping Incorporated,* supra.

The judgment of dismissal is reversed and appellant is awarded her costs and reasonable attorney's fees on appeal.

LACAGNINA and LIVERMORE, JJ., concur.