**ESSEX ENGINEERING COMPANY**

v.

**CREDIT VENDING, INC., et al.**

**Civ. No. N–85–433 (PCD).**

United States District Court,
D. Connecticut.

March 22, 1990.

Lisa J. Damon, Patricia A. Carpenter, Philip S. Walker, Day, Berry & Howard, Hartford, Conn., Peter Adomeit, Special Master, Springfield, Mass., for plaintiff.

Michael E. Satti, Richard S. Lipman, Schatz & Schatz, Ribicoff & Kotkin, James F. McCormack (Nationawide), Green & Kleinman, P.C., Hartford, Conn., Claudia M. Sklar, Walter T. Merrill (Pro hac vice), Phoenix, Ariz., for defendants.

William H. Narwold (non-party), Hartford, Conn.

### RULING ON REVISED MOTION TO AMEND AND ADD PARTY DEFENDANT

DORSEY, District Judge.

On April 21, 1989, plaintiff moved for permission to join Virginia Merrill ("wife"), wife of defendant Bruce Merrill ("Merrill"), as an additional defendant under Rules 19 and 20, and to amend under Rule 15 to add a fraud count against the Merrills. Plaintiff contended that the motion was necessitated by the recent disclosure that Merrill had no separate property from which to satisfy a judgment against him as all of his property was owned as community property with wife and not subject to execution under Arizona law for a judgment against Merrill individually. As the matter was nearing its fourth anniversary and was scheduled for jury selection on May 1, 1989, the motion was denied as untimely and it was noted that "[t]he fact that plaintiff's counsel has just learned of the implications of the community property laws of Arizona is insufficient to warrant leave to amend in light of the late stage of this lawsuit and the substantial possibility of undue delay." Ruling at 2. It was also deemed doubtful that personal jurisdiction over wife could be found.

On May 11, 1989, plaintiff moved the court to reconsider the denial of that motion and asserted that the concerns of delay could be alleviated by bifurcating the trial of the newly pleaded issues. That motion was also denied on July 12, 1989 on the basis that "the exercise of jurisdiction over [wife] is not supported by law." Ruling on Pending Motions at 4. It was noted that "[n]o one is claimed to have acted for [wife] in relation to any matter pertinent to this litigation." *Id.* at 3.

Plaintiff seized on that language and filed the revised motion at bar claiming that "that is precisely the plaintiff's jurisdictional claim." Plaintiff's Memorandum in Support at 2. Plaintiff concedes that wife has had no personal contact with the State of Connecticut, but contends that she did transact business in this state with respect to her community property through her husband, who acted as her agent and the agent for their community.[1]

*Facts Supplementing the Record*

In support of the instant motion, plaintiff has supplemented the record with wife's deposition and exhibits, including the corporate records of Merrill Communications, Inc. ("MCI") and CVI, various financial documents, and several guarantees executed by both Merrills. The Merrills have been married for over 47 years during which they have resided in Arizona. They claim that all of their property is community property and that they have little or no separate property. The record also reflects that Merrill took a more active role than his wife in managing their business and financial affairs. However, wife testified that she participated in investment decisions. Wife Deposition at 36. She testified that they have owned numerous businesses as part of their community property and have shared the benefits and unfavorable results of such ventures. *Id.* at 66–67.

Although she was on the board of directors of a number of the companies, she asserts that she had no day-to-day involvement or management responsibility for any of the companies. *Id.* at 24.

Plaintiff notes her involvement in CVI as a director. As an MCI director, she authorized Merrill, as president of MCI, to purchase a controlling interest in CVI and enter a stockholder's agreement. Plaintiff's Exhibit 8. She was elected as a director of CVI and expressly adopted several resolutions and ratified all pre-incorporation acts which plaintiff asserts included the negotiations in issue. Plaintiff's Exhibit 11. On July 31, 1984, as a CVI director, she ratified the Asset Purchase Agreement between CVI and plaintiff. *Id.* Although she had no present recollection of these events at her deposition, she did represent that she signed the various corporate resolutions freely as a director and that she understood what she was signing after explanation where necessary. Wife Deposition at 101–07.

*Discussion*

■ Before a federal court sitting in diversity can properly assert jurisdiction over a nonresident defendant, it must determine: 1) whether the forum state's long-arm statute authorizes the exercise of jurisdiction; and 2) whether the statutory authority comports with due process. *Connecticut Artcraft Corp. v. Smith,* 574 F.Supp. 626, 629 (D.Conn.1983). Connecticut's long-arm statute, Conn.Gen.Stat. § 52–59b(a), provides in part that "a court may exercise personal jurisdiction over any nonresident individual ... who in person or through an agent" transacts any business or commits a tortious act within the state.

■ Plaintiff seeks leave to allege that the activities of Merrill in dominating and controlling CVI, which the jury concluded warranted piercing the corporate veil be-

---

1. By letter dated August 10, 1989, plaintiff sought permission to depose wife to supplement the record in support of its claim of agency. This request was granted on August 31, 1989. After several delays in deposing wife and obtaining documents, plaintiff supplemented the record on January 9, 1990 and the parties filed further briefs, the last on March 6, 1990.

Although the prior motions were opposed by defendants, wife has retained counsel to represent her interests with respect to the discovery taken by plaintiff and has filed memoranda in opposition to the motion at bar.

tween CVI and him, "were undertaken by [him] individually and as agent of [wife] with respect to the Merrills' community property, with actual, implied and/or apparent authority" to act as her agent, at least to the extent of their shared interest in their community property under Arizona law. Plaintiff's logic is that because CVI was community property, Merrill acted for the marital community, not just for himself, and that the corporate veil should be pierced as to her as well, thereby permitting plaintiff to reach the marital community property. Plaintiff's Reply Memorandum at 2–3. Plaintiff also seeks leave to assert a ninth cause of action sounding in fraud against Merrill alleging that when he executed personal guarantees of certain of the contracts between Essex and CVI, he represented that he had sufficient personal assets to give effect to the guarantees.[2] Plaintiff's proposed claim alleges that he misrepresented his financial situation and that substantially all of his assets were community property. Plaintiff asserts that had it known the true facts it would have sought wife's joinder on the guarantees or other financial assurances. Plaintiff also alleges that Merrill undertook such conduct, in whole or in substantial part, for the benefit of the marital community.

Under Arizona's community property laws, both spouses have the right to control community assets. Specifically, Ariz.Rev. Stat. §§ 25–214(B) and (C) provide:

(B) The spouses have equal management, control and disposition rights over their community property, and have equal power to bind the community.

(C) Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in any of the following cases:

...;

(2) Any transaction of guaranty, indemnity or suretyship.[3]

Further, Ariz. Rev. Stat. § 25–215(D) provides that either spouse may contract debts or otherwise act for the benefit of the community. However, if a plaintiff wants to hold the marital community accountable for such an obligation, both spouses must be sued jointly and any judgment recovered shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation. *See Spudnuts, Inc. v. Lane,* 139 Ariz. 35, 676 P.2d 669, 670 (App.1984). "A judgment against one spouse does not bind the community." *Id.,* citing *Eng v. Stein,* 123 Ariz. 343, 599 P.2d 796 (1979).

Plaintiff asserts that the need to join wife as a defendant is critical and her absence will allow Merrill to shield his community property from any liability for the verdict rendered in plaintiff's favor. In *C & J Travel, Inc. v. Shumway,* 161 Ariz. 33, 775 P.2d 1097, 1099 (App.1989), plaintiffs obtained judgments in New Hampshire state court against an Arizona husband for breach of vehicle lease agreements. After learning that the husband did not have sufficient separate property to satisfy the judgments, plaintiffs brought suit in Arizona against both spouses seeking an order that the New Hampshire judgment was enforceable against the marital community.

In *Shumway,* the court held that the wife, who was not a defendant in the New Hampshire cases, could not be added as a party to an action on the judgments in those cases in Arizona by the terms of A.R.S. § 25–215(D), which requires joinder in order to satisfy a judgment from community property.[4] "The obvious purpose of joining the spouses is to give each notice and an opportunity to defend." *Vikse v.*

---

**2.** Wife asserts that these fraud allegations form the basis of an adversary proceeding in the Bankruptcy Court.

**3.** Defendants contend that it is "obvious that plaintiff is grasping at straws in an effort to correct a mistake it made some five years ago, in failing to obtain the signature of [wife] on guarantees signed by her husband." All of plaintiff's filings assert the theme that it would be a "colossal swindle" if Merrill were permitted

to hide behind the community property laws of Arizona to frustrate plaintiff's recovery of the nearly $2,000,000 verdict rendered in its favor, net of the damages awarded to defendants.

**4.** In *Spudnuts, Inc. v. Lane,* 139 Ariz. 35, 676 P.2d 669 (App.1984), plaintiff obtained judgment against the defendant husband for breach of a franchise agreement. After the original judgment was affirmed on appeal, the trial court granted plaintiff's request to amend the

*Johnson,* 137 Ariz. 528, 672 P.2d 193 (App. 1983). This provision, making the community liable for community obligations incurred outside Arizona, was also enacted to protect the rights of creditors but, in order to take advantage of this protection, the creditor must join both spouses and thereby have jurisdiction over the community. *See Vikse,* 672 P.2d 193 (All that needed to be done here, assuming community liability, was to join both spouses in the Minnesota lawsuit.). Further, any attempt to relitigate the issue in Arizona in a suit against both spouses would be barred by the doctrine of res judicata as the issue had already gone to judgment against the spouse in New Hampshire. Thus the court dismissed plaintiff's complaint holding that A.R.S. § 25–215(D) prevented execution of the New Hampshire judgments upon community property because defendant's wife was not a party to the New Hampshire action.

Plaintiff cites two cases which it claims address the "precise issue" before this court. *See Rollins v. Vidmar,* 147 Ariz. 494, 711 P.2d 633 (App.1985); *Barer v. Goldberg,* 20 Wash.App. 472, 582 P.2d 868 (1978). Plaintiff asserts that in both cases a nonresident spouse in wife's position was subject to personal jurisdiction by virtue of the spouse's membership in the marital community.

In *Barer,* plaintiffs sued the defendant husband to secure repayment of a loan. The husband impleaded his former wife, a nonresident of the forum state, seeking contribution. She challenged the assertion of long-arm jurisdiction under a statute similar to Connecticut's. The court noted that "the critical question to be answered is whether the community had sufficient contact with the [forum state] in connection with [the] transaction" in issue.

The loan in issue was solicited by the husband to fund a business venture. The court found that the loan, solicited on behalf of the community, was presumptively a community debt and that the wife as a member of the community stood to benefit if the venture was successful. The court also held that the husband, as the manager of the community, was her agent. Thus the court concluded that "the transaction by the husband as manager of the community, is all that is necessary to subject the wife to jurisdiction, particularly where she had knowledge of the transaction."

Similarly, in *Rollins,* 711 P.2d 633, the court followed *Barer* and held a nonresident spouse to be subject to jurisdiction by virtue of his membership in the marital community. The debt in issue, solicited by the wife at the behest of the community, was found to be a community obligation under California's community property law which provided that the community is liable for all debts contracted by either spouse during marriage.

These cases frame the issue as whether the community had sufficient contact with the forum state to subject wife to this court's personal jurisdiction with respect to business dealings in which she took no active part. Plaintiff alleges, and the Merrills do not dispute [5], that Merrill's ownership interest in CVI is community property in which his wife shares an interest under Arizona law. As a community asset, CVI was subject to Merrill's right of control and management. Under Arizona law, either spouse may contract debts or otherwise act for the benefit of the community. A.R.S. § 25–214.[6] Since all of the Merrill's property is claimed to be community property, it follows that the fruits of his business dealings would inure to the benefit of the

---

judgment to add defendant's wife as a party-defendant to comply with A.R.S. § 25–215(D). The appellate court reversed on the basis that adding a defendant after adjudication, who was not served and had no opportunity to answer and defend, would offend due process. The court held that the wife, and thus the community, could not be subject to liability by her addition as a defendant after the case has been decided on appeal.

5. *See* Wife's Memorandum in Opposition at 12 ("the evidence shows that Bruce and Virginia Merrill had a long marriage, held all of their property as community property, and that Bruce Merrill took the more active role in managing [their] business and financial affairs").

6. In addition, the community property of both spouses is liable for intentional torts committed by one spouse where the intent and purpose of the tortious conduct was to benefit the commu-

community. *See Barer*, 582 P.2d at 874 ("as a member of the community [the wife] stood to benefit if the venture had been successful"). In fact, his wife testified that they shared both the benefits and unfavorable results of any business ventures. Wife Deposition at 67.

Wife contends that Connecticut agency law must be applied to determine whether Merrill was acting as his wife's agent for long-arm purposes and that there is no evidence of the existence of an agency relationship, i.e., no evidence that Merrill was acting at the behest and for the benefit of his wife. *See Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 132–33, 464 A.2d 6 (1983). However, this fails to take into account her membership in the marital community. Where a party seeks to join a spouse based on membership in the marital community, the court must consider the issue of agency in light of the legal status given to the community itself under the applicable community property laws.

Under Arizona law, the community is given a status analogous to that of a partnership in that each spouse can bind the community. However, it cannot be sued as a legal entity. The community can only be held liable for an obligation incurred by one spouse for the benefit of the community, i.e., a community obligation, where both spouses are joined thereby giving the court "personal jurisdiction over the community." *C & J Travel*, 775 P.2d at 1098.

As the spouse who took the much more active role in the community's financial and business dealings, Merrill acted as his wife's agent with respect to their community property. *Barer*, 582 P.2d at 872–74 ("we hold that the transaction by the husband as manager of the community, is all

that is necessary to subject the wife to jurisdiction, particularly where she had knowledge of the transaction"). Although wife did not take an active role in the negotiations in issue, she was aware of them both individually and as a director of CVI and stood to benefit, as a member of the community, from the business venture if successful. Mr. Merrill conducted the business in question for and on behalf of the community and for its benefit. As part of the community, wife stood to benefit by the enhancement of the community's property. Thus, Mr. Merrill was acting for her benefit and thus on her behalf in his conduct of the business in issue.

The community, through MCI and CVI, the latter found to be the alter ego of Merrill, was present in the forum state. Both corporations are or at least were at the time community property. The initial negotiations with respect to the Asset Purchase Agreement were undertaken by MCI and later consummated by CVI. "[T]o induce [plaintiff] to enter into" such agreement, Merrill personally guaranteed CVI's performance. Thus plaintiff has made a prima facie showing that jurisdiction exists under Connecticut's long-arm statute over the community and Mrs. Merrill by virtue of her membership in the marital community.[7] In addition, Mr. Merrill's conduct and presence within the forum state, undertaken as the agent of and for the benefit of the community, and for Mrs. Merrill by force of the law of Arizona, is sufficient to ensure that the exercise of personal jurisdiction over Mrs. Merrill does not offend traditional notions of fair play and substantial justice.

Mrs. Merrill's assertion that adding her at this stage would result in "insurmounta-

nity. *Caldwell v. Caldwell*, 126 Ariz. 460, 616 P.2d 920 (App.1980). Benefit to the community need not be the primary intent but some benefit must be intended. *Id.*

7. In *C & J Travel*, 775 P.2d 1097, judgments were obtained in New Hampshire court against an Arizona husband and the corporation of which he was president for a breach of vehicle lease agreements signed by him in his corporate capacity. Although there was no indication that the wife had any involvement in the business and did not enter the picture until the judgment creditors determined that the husband had in-

sufficient separate property to satisfy the judgments, the court held that "[n]o procedural impediment prevented the creditors from joining [the wife] as a defendant in [the New Hampshire] cases if they intended to assert her liability." *Id.* The court apparently saw no jurisdictional obstacle to joining the wife based on her membership in the community. Thus, the uniqueness of Arizona's community property law deems all members of the community present where the community's property is present.

ble procedural and practical difficulties" does not convince this court that it should deny plaintiff's motion. Although the procedural posture of this case is unusual, its resolution does not pose "insurmountable" problems, as such may be resolvable in further proceedings. Plaintiff has made a prima facie showing of personal jurisdiction. Arizona law requires that both spouses be joined in order to obtain a judgment enforceable against community property. The motion to amend and add an additional defendant is granted. Plaintiff shall file and serve its amended complaint, and a copy of this ruling, on or before March 30, 1990.

On or before April 16, 1990, each party shall file a statement of their intended discovery and motions, together with a proposed schedule for the completion or filing thereof. Based on the record as of that date, a scheduling order will enter. Should the parties, after consultation among them and a determination that a conference is reasonably likely to be fruitful in a consideration of settlement, they may request such be scheduled by the deputy clerk.

SO ORDERED.