248 P.3d 703

**Marci SIGMUND, Leslie Sigmund, and Patricia Ratz, Petitioners,**

v.

**The Honorable John REA, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Ascenz Friction & Brake, L.L.C., a Delaware Limited Liability Company, and Benjamin V. Booher, Sr., an individual, Real Parties in Interest.**

**No. 1 CA–SA 10–0223.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 1, 2011.

Morrill & Aronson, PLC By K. Layne Morrill and Christine R. Taradash, Phoenix, and Steven M. Hamburg, P.C. By Steven Milton Hamburg pro hac vice, Clayton, MO, Attorneys for Petitioners.

MayesTelles PLLC By J. Blake Mayes, and David V. Telles, Phoenix, Attorneys for Real Parties in Interest.

## OPINION

SWANN, Judge.

¶1 The issue in this special action is whether Arizona courts can exercise personal jurisdiction over residents of Missouri who have no contacts with Arizona apart from the unilateral business dealings of their spouses. Because Missouri law contains no concept analogous to community liability, we conclude that the absence of minimum contacts is fatal to jurisdiction.

### FACTS AND PROCEDURAL HISTORY

¶2 The pertinent facts are undisputed. In 2007, AscenZ Friction and Brake, a Delaware limited liability company with its principal place of business in Maricopa County, and Benjamin Booher, a Maricopa County resident (collectively, "Plaintiffs") entered into a

business agreement with Steven Sigmund, Jack Sigmund, and Thomas Ratz ("Husbands"), who were all Missouri residents. In 2008, Plaintiffs brought an action in Arizona for damages resulting from the Husbands' alleged misrepresentations in connection with the business dealings. The complaint named Husbands as defendants, as well as their "Jane Doe" wives ("Wives"). The complaint alleged that the Husbands acted for the benefit and on behalf of their respective marital communities in their business dealings.

¶ 3 The record demonstrates that the Wives are citizens of Missouri, have never been to Arizona,[1] do not own property here, and did not participate in the business transactions at issue or have any business contact with Plaintiffs. The complaint contains no allegations of any conduct at all by Wives— they are simply mentioned generically in the caption. At oral argument before this court, Plaintiffs' counsel candidly conceded that there are no minimum contacts between Wives and Arizona apart from the conduct of Husbands. The parties therefore agree that this record, without more, could not support the independent exercise of personal jurisdiction over Wives.

¶ 4 Wives filed separate motions to dismiss, arguing that the Arizona court lacked personal jurisdiction over them because they had no personal contact with Arizona and because Missouri law did not support the vicarious establishment of minimum contacts through the concept of a marital community. The trial court denied the motions, reasoning that "[t]he law of tenancy by the entirety [the presumptive form of marital property ownership in Missouri] appears to be based on the concept that the spouses are a single unit, the marital community." Because it viewed Missouri law as creating the functional equivalent of a marital community, the trial court found that jurisdiction existed under *Rollins v. Vidmar*, 147 Ariz. 494, 711 P.2d 633 (App.1985). Wives now seek special action relief.

## SPECIAL ACTION JURISDICTION

■ ¶ 5 Although we rarely accept special action jurisdiction over a challenge to the denial of a motion to dismiss, we do so when the motion "reveals an absence of jurisdiction,' as an appeal inadequately remedies a trial court's improperly requiring a defense in a matter where it has no jurisdiction.' " *Taylor v. Jarrett*, 191 Ariz. 550, 551–52, ¶ 5, 959 P.2d 807, 808–09 (App.1998) (quoting *Polacke v. Superior Court (Ybarra)*, 170 Ariz. 217, 219, 823 P.2d 84, 86 (App.1991)).

■ ¶ 6 Special action jurisdiction is also proper when a case raises matters of first impression, statewide significance, or pure questions of law. *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001). "A 'determination that personal jurisdiction can be properly exercised is a question of law, reviewable *de novo* when the underlying facts are undisputed.' " *Morgan Bank (Del.) v. Wilson*, 164 Ariz. 535, 536–37, 794 P.2d 959, 960–61 (App.1990) (quoting *Haisten v. Grass Valley Med. Reimb. Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986)). This case presents a purely legal issue of first impression. We have previously held that when non-resident spouses reside in a community property state, Arizona courts may exercise personal jurisdiction over both of them even when one lacks minimum contacts with Arizona. *See Rollins*, 147 Ariz. at 496–97, 711 P.2d at 635–36. But we have never addressed the same question when the spouses reside in a state that does not recognize the concept of the marital community. We therefore accept jurisdiction to clarify the reach of *Rollins*.

## DISCUSSION

■ ¶ 7 Personal jurisdiction over a non-resident defendant generally cannot be conferred by a third party's unilateral activity. *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 7, 13 P.3d 280, 282 (2000). Instead, personal jurisdiction exists only when the defendant can reasonably anticipate that his or her conduct and connection with Arizona will subject it to the state's jurisdiction. *In re Consol. Zicam Prod. Liab. Cases*, 212 Ariz. 85, 90, ¶ 11, 127 P.3d 903, 908 (App.2006).

---

**1.** Marci Sigmund had been in Arizona "for purposes of air travel."

¶ 8 In *Rollins*, the court held that the individual actions of one spouse were sufficient to establish minimum contacts for the marital community because the case involved repayment of a "community obligation" under a California statute that made "the property of the [marital] community [ ] liable for the contracts of either spouse which are made after marriage." 147 Ariz. at 496, 711 P.2d at 635. This case is different.

■ ¶ 9 "[T]he property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property." *Lorenz–Auxier Fin. Group, Inc. v. Bidewell*, 160 Ariz. 218, 220, 772 P.2d 41, 43 (App.1989) (citing *Nationwide Res. Corp. v. Massabni*, 143 Ariz. 460, 694 P.2d 290 (App.1984)). We must therefore determine whether, under Missouri law, Wives or any entity similar to a marital community could be held liable for the Husbands' conduct.

■ ¶ 10 Plaintiffs argue that personal jurisdiction over the Wives is appropriate because the individual marital communities, to which each of the Wives allegedly belong, benefitted from Husbands' business transactions.[2] Plaintiffs rely on a passage from *Rollins* contending that the "critical" jurisdictional question was whether the "*community* had sufficient contacts with [the forum state] in connection with this transaction." 147 Ariz. at 496, 711 P.2d at 635 (quoting *Barer v. Goldberg*, 20 Wash.App. 472, 582 P.2d 868, 872 (1978)).

■ ¶ 11 In Arizona, all property acquired during marriage, absent certain enumerated exceptions, is presumed to be "community property" and each spouse has "equal management, control and disposition rights" over it, including "equal power to bind the community." *See* A.R.S. §§ 25–211, –214. But Missouri law is different. Under Missouri's ownership scheme, spouses are unable to unilaterally "encumber or adversely affect the estate without the other's assent" because "[n]either spouse has exclusive management power." *In re Garner*, 952 F.2d 232, 235 (8th Cir.1991). In Missouri, all property acquired after marriage, with few enumerated exceptions, is presumptively "marital property." Mo.Rev.Stat. § 452.330(2). "When spouses jointly own property, it is presumed to be held as a tenancy by the entirety."[3] *See Capital Bank v. Barnes*, 277 S.W.3d 781, 782 (Mo.Ct. App.2009). When property is "held by the entirety the husband and wife hold it not as separate individuals but as one person." *Niehaus v. Mitchell*, 417 S.W.2d 509, 514 (Mo.Ct.App.1967).

¶ 12 The notion that married persons in Missouri hold property as "one person" is wholly different from the model of community property, under which a separate entity— the community—owns property, realizes the fruits of the spouses' efforts and bears the burden of the debts they each may incur. In Missouri, when a "judgment and execution are against [one spouse] alone such judgment cannot *in any way* affect property held by the husband and wife in the entirety." *Hanebrink v. Tower Grove Bank & Trust Co.*, 321 S.W.2d 524, 527 (Mo.Ct.App.1959) (emphasis added). The only way a creditor can reach entirety property is if a husband and wife jointly act to incur the obligation. *See Garner*, 952 F.2d at 235.

¶ 13 Missouri is not a community property state in the traditional sense, nor does its law create anything analogous to a "marital com-

---

**2.** In their response to the special action petition, Plaintiffs assert for the first time that "fairness" demands that we deny relief because if the Wives are not now joined and ever acquire community property in Arizona in the future, it may be difficult to enforce any judgment against that community property. *See* A.R.S. § 25–215(D) (requiring both spouses to be joined in an action to collect from community property). We reject this argument. The right to be free from the jurisdiction of a state with which a person has no contact is of constitutional dimension, and speculative concerns about future debt collection can-

not trump due process. *See Williams*, 199 Ariz. at 3, ¶ 7, 13 P.3d at 282.

**3.** In addition to real property, entirety property includes bank accounts, *Scott v. Union Planters Bank, N.A.*, 196 S.W.3d 574, 577 (Mo.Ct.App. 2006); insurance proceeds on property, *In re Estate of Morton*, 822 S.W.2d 456, 459 (Mo.Ct. App.1991); certificates of deposit, *Estate of Hopkins v. Estate of Hopkins*, 862 S.W.2d 470, 476 (Mo.Ct.App.1993); and securities, *Cann v. M & B Drilling Co., Inc.*, 480 S.W.2d 81, 85 (Mo.Ct.App. 1972).

munity." No Missouri statute allows the unilateral actions of one spouse to create a community obligation. *Compare* A.R.S. §§ 25–211, –214. Instead, Missouri case law creates a presumption that all property titled in both spouses' names is held as tenancy in the entirety, and further holds that the unilateral actions of one spouse cannot bind any property held by the entirety. Accordingly, the Husbands' unilateral actions cannot be attributed to the Wives. Because the Wives have no minimum contacts with Arizona, Arizona courts cannot exercise jurisdiction over them.

¶ 14 Our decision in this case is based on the application of Missouri law to the facts before us—we do not draw a bright line distinction between community property states and all other states. Indeed, we recognize that under the general concept of tenancy by the entirety, some states recognize a presumption "that either spouse has the power to act for both, without specific authority, so long as the benefits of such action inure to both." 41 C.J.S. *Husband and Wife* § 35 (2010). Likewise, concepts of agency might justify the exercise of jurisdiction in appropriate cases. But the record here supports no inference that the Husbands were acting as agents of the Wives in their business dealings, and Missouri law does not presume agency by virtue of the marital relationship alone. *See Cohn v. Dwyer,* 959 S.W.2d 839, 843 (Mo.Ct.App. 1997) ("In the husband-wife context, one spouse cloaks the other with the apparent authority to act on his or her behalf if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her.") *See also Moellering Concrete, Inc. v. Doerr,* 784 S.W.2d 864, 867 (Mo.Ct.App. 1990) (courts will not infer an agency only from the marital relationship, especially when the petition does not plead such a relationship or use any words that would imply one); *Link v. Cox,* 529 S.W.2d 189, 191 (Mo.Ct.App.1975) (finding no agency and no liability for husbands' fraudulent actions when wives did not know plaintiff or have any demonstrated interest in the subject corporation, and their only connection to husbands' actions was through their "status as wives").

### CONCLUSION

¶ 15 For the foregoing reasons, we accept jurisdiction, grant relief and direct the superior court to grant Wives' Motion to Dismiss.

CONCURRING: PHILIP HALL, Presiding Judge and SHELDON H. WEISBERG, Judge.