James GAGAN, Plaintiff–Appellee,

Lajunta Monroe, Intervenor–Appellant,

v.

Victor SHARAR; James A. Monroe, Defendants–Appellees.

No. 02–15449.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2003.

Filed July 22, 2004.

Dow Glenn Ostlund, Tiffany & Bosco, P.A., Phoenix, AZ, for the appellant.

C. Joseph Yast, Law Office of C. Joseph Yast, Northfield, Ill, for the appellee.

Before: CANBY, KLEINFELD, and RAWLINSON, Circuit Judges.

KLEINFELD, Circuit Judge.

This case concerns execution in a community property state of a judgment obtained in a common law state.

## Facts

The dispute underlying this case has already been the subject of two published decisions by the Seventh Circuit, so we take our facts from those decisions. James Gagan invested substantial funds in a limited partnership to fund, build, and operate cable television systems. James Monroe was the general partner. Monroe and his associates siphoned off money that Gagan was entitled to, so Gagan sued them in the United States District Court for the Northern District of Indiana on RICO and other state and federal theories. The court directed a verdict for Gagan on some claims and sent the rest of the claims to a jury. After two trials, Gagan eventually won a $1.7 million judgment against Monroe. The judgment was affirmed on appeal.[1]

Monroe did not pay Gagan, and Gagan was frustrated in his attempts to execute on the judgment. After trying unsuccess-

and, though acknowledging my misgivings, reserve judgment.

1. *Gagan v. American Cablevision, Inc.,* 77 F.3d 951 (7th Cir.1996) (*"Gagan I"*).

fully to collect, Gagan obtained an order from the district court in Indiana ordering Monroe to turn over to Gagan his interest in Apache Cablevision, a cable television company in Arizona, up to the amount of the judgment. On the eve of the second trial in Indiana, Monroe transferred his interest in Apache Cablevision in large part to his wife LaJunta, but the district court held the transfer void as fraudulent. The district court held that the turnover order was a proper exercise of its jurisdiction over the judgment debtors through use of its contempt powers, and that Arizona community property law did not bar Gagan from collecting the Monroes' property. Monroe appealed this equitable order in aid of execution, and the Seventh Circuit again affirmed.[2]

Still Monroe did not pay. Gagan then registered his federal judgment from the District Court for the Northern District of Indiana in the District Court for the District of Arizona.[3]

Gagan moved in the Arizona district court for expansion of the equitable order in aid of execution from the Indiana district court, to reach the interests of the Monroes in more of their complex Arizona property holdings. Monroe's wife, LaJunta, moved to intervene. Arizona, unlike Indiana, is a community property state. LaJunta has been Monroe's wife, and they have lived in Arizona, at all relevant times. LaJunta claimed in moving to intervene that the property on which Gagan sought to execute is community property in which she has an interest, and that Gagan could not collect on such property under Arizona law. The Arizona district court denied LaJunta's motion to intervene at the same time it granted Gagan's motion to expand the equitable order to reach more of the Monroes' community property. The court ordered the clerk to issue a writ directing the U.S. Marshal to levy on and sell "the interests of Defendant Monroe and his wife LaJunta Monroe" in several Arizona companies.

LaJunta did not file a notice of appeal at any time from the order denying her motion to intervene. Instead, she moved in the district court for relief from the judgment under Federal Rule of Civil Procedure 60(b). Her theory was that the judgment was void for want of jurisdiction, because she was not joined in the Indiana action against her husband, and that Gagan could not execute against any property in which she had a community interest. The district court denied this motion, and LaJunta appeals.

## Analysis

LaJunta argues, first, that the trial court never acquired jurisdiction over her, so Gagan's judgment is void as to both of the Monroes for lack of due process. By trial court, she apparently means the District Court for the Northern District of Indiana, which is the only court that tried anything in this case. She is plainly correct that the Indiana federal court had no personal jurisdiction over her, because she

---

**2.** *Gagan v. Monroe,* 269 F.3d 871 (7th Cir. 2001) (*"Gagan II"*). The Seventh Circuit did not reach the issue whether the transfer from Monroe to his wife was fraudulent. *Id.* at 874.

**3.** *See* 28 U.S.C. § 1963. The statute reads:
A judgment in an action for the recovery of money or property entered in any ... district court ... may be registered by filing a certi- fied copy of the judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

was not named or served in the Indiana suit. And she is plainly wrong as to her husband, James Monroe. He was sued and served, the Indiana federal court had and exercised jurisdiction, and he lost.

LaJunta next argues that Gagan cannot execute on the Monroes' community property in Arizona, because Arizona Statute § 25–215(D) requires that where a spouse has acted for the benefit of the community and thereby incurred a debt or obligation, "the spouses shall be sued jointly," and the debt shall be satisfied out of the community property.[4] This argument, if successful, would create a "Catch–22" for Gagan. Without some basis for accusing LaJunta of the racketeering and other wrongs for which Gagan sued her husband, all Gagan could get from naming her in the Indiana case would be a Rule 11 sanction. But if he failed to join her, then, under her theory, when Gagan registered his judgment in federal court in Arizona, he would be barred from collecting on the wealth James had wrongfully appropriated and enriched the community with, because he had not named LaJunta in the Indiana suit.

The Arizona Supreme Court has not spoken on how to resolve this issue, but Arizona's Courts of Appeals have. Two earlier cases favor LaJunta; three later cases favor Gagan. We think the Arizona Supreme Court would likely adopt the view of the later cases.

*Vikse v. Johnson*,[5] decided in 1983, supports LaJunta's view of the law. It held that a lawsuit in a foreign state had to name both spouses in order to subject community property to the judgment.[6] *C & J Travel, Inc. v. Shumway*, six years later, went the same way.[7] The *Shumway* court held that Arizona law required joinder of the defendant's spouse in the original action in New Hampshire, even though it was not required under New Hampshire law, where no procedural impediment prevented such joinder.[8]

Three subsequent Arizona Court of Appeals decisions decided since 1993 have gone the other way, undercutting LaJunta's position. *Oyakawa v. Gillett* distinguished and limited *Vikse*, holding that a California judgment could be enforced against community property in Arizona despite one spouse not being named in the California action.[9] Although *Oyakawa* is distinguishable because it dealt with a judgment from California, another community property state, and the court held that the California procedures were sufficient to protect the interest in the community,[10] *Oyakawa* is important because it began a line of cases in which the Arizona courts have moved away from compliance with § 25–215(D) as a condition of enforcing foreign judgments.

The Arizona case most on point is *National Union Fire Insurance Co. v. Greene*, which held that the requirements of full faith and credit required recognition of a foreign state's judgment despite the foreign state's nonconformity to Arizona law.[11] Similar to Gagan's registration of

---

4. Ariz.Rev.Stat. § 25–215(D).

5. *Vikse v. Johnson*, 137 Ariz. 528, 672 P.2d 193 (1983).

6. *Id.* at 194–95.

7. *C&J Travel, Inc. v. Shumway*, 161 Ariz. 33, 775 P.2d 1097 (1989).

8. *Id.* at 1100.

9. *Oyakawa v. Gillett*, 175 Ariz. 226, 854 P.2d 1212, 1218 (1993).

10. *Id.* at 1215.

11. *Nat'l Union Fire Ins. Co. v. Greene*, 195 Ariz. 105, 985 P.2d 590, 595 (1999).

his Indiana judgment under § 1963, the insurance company in *Greene* had registered its judgment from a New York state court under the Arizona provisions adopting the Revised Uniform Enforcement of Foreign Judgments Act.[12] Like the Indiana judgment, the judgment in *Greene* had not been against the wife, because she had not been joined in the New York lawsuit. In these circumstances, the *Greene* court held that "[a]n Arizona court may not impress Arizona procedural law upon a foreign judgment and refuse to recognize that judgment merely because Arizona law was not followed in obtaining it," and that "due process does not necessarily require joining both spouses to obtain a valid judgment against the marital community."[13] The court in *Greene* was troubled, as we are, by the fact that the foreign state's law would not have allowed joining the spouse, but it nevertheless limited and distinguished *Vikse*.[14] Reasoning that a New York court could not be expected to comply with Arizona procedure, the court looked past § 25–215(D)'s joinder requirement and relied on § 25–215(C), which makes the community property liable for a judgment because it would have been a community obligation if incurred in Arizona, and held that the community property could be reached.[15] Likewise, the Indiana district court in our case could not have been expected to comply with Arizona procedure requiring joinder, where joinder was improper in that court.

*Greene* also held, however, that as a matter of due process, the non-joined spouse must be given notice and an opportunity to be heard before she can be deprived of her interest in community property, and the time for that notice and hearing is during execution in Arizona.[16] The *Greene* court held that a previously unjoined spouse's appearance and participation in the other spouse's motion to quash a writ of garnishment waived any defense of lack of notice.[17] Likewise, La-Junta's appearance and participation in the District Court in Arizona must be held as a matter of Arizona law to waive any defense of lack of notice. The purpose of joining the wife as a party, *Greene* held, was to enable her to defend her interests in community property and to argue that the debt should be a separate obligation of the husband rather than a community debt.[18] The wife in *Greene* had her opportunity to be heard when she joined her husband's motion to quash the writ of garnishment.[19]

In this case, LaJunta could have moved to quash the writ of execution as a means of presenting arguments that the community was not liable for the debt, or that the writ improperly reached her separate property, but she made no such motion or arguments.[20] She moved to intervene to protect her interest in the community property, but the district court denied intervention. LaJunta did not appeal that denial, and cannot now be

12. Ariz. Stat. § 12–1701 et seq.

13. *Greene*, 985 P.2d at 593.

14. *Id.* at 592, 594.

15. *Id.* at 593.

16. *Id.* at 595 (citing to both federal and state constitutional provisions and cases regarding the right to due process); *see* U.S. Const. amends. V, XIV; Ariz. Const. art. 2, § 4;

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Huck v. Haralambie*, 122 Ariz. 63, 593 P.2d 286, 288 (1979).

17. *Greene*, 985 P.2d at 596.

18. *Id.*

19. *Id.*

20. *See id.*

heard to contest it. She moved for relief under Rule 60(b), but the district court denied the motion partly on the proper ground that LaJunta did not present newly discovered evidence or make a showing of clear error or intervening change of law, as required by Rule 60(b)(6).

The district court also denied relief under Rule 60(b) partly on the ground that LaJunta could not challenge the decision of the Seventh Circuit that led to the underlying judgment. To the extent that this ruling may have been based on the doctrine of res judicata, LaJunta contends that it was erroneous because she was not a party or in privity with a party to the Seventh Circuit proceedings. We need not address the privity issue, however, because LaJunta has not been prejudiced by any possible reliance of the district court on the res judicata effect of the Seventh Circuit decision. LaJunta did not contend in her Rule 60(b) motion that her husband's tort was not committed for the benefit of the community, and she offered no other reason why the debt was not a community obligation.[21] Her challenge was based entirely on the argument, which we have rejected, that the community property could not be subject to an Indiana federal judgment to which she was not a party.

*Greene* is not quite the end of the story in Arizona. Two years later, the Arizona Court of Appeals, in *Alberta Securities v. Ryckman,* followed *Greene* and held that a Canadian judgment against a husband could be enforced only against the community property of both spouses in Arizona.[22] *Ryckman* is not particularly helpful because it involves a separate action on a

foreign judgment rather than mere registration of a judgment, and the wife *was* joined in that Arizona action.[23] *Ryckman* is important, though, because it continues the trend in Arizona, noted in the Seventh Circuit's *Gagan II* opinion, of recognizing and enforcing foreign judgments where both spouses are not joined.

■ We conclude that, consistent with Arizona law, a federal judgment from a district other than the District of Arizona, registered under § 1963, in which only one spouse was named in the underlying action, may nevertheless be executed on the community property of both spouses, in Arizona, if the judgment is for a community obligation, despite failure to name the other spouse in the action filed outside Arizona. Gagan could not have joined LaJunta in his RICO action because, according to the facts we are presented with, she was not involved in the scheme for which her husband was found liable.

■ We also conclude, consistent with Arizona law, that a non-party spouse must be given an opportunity at some time to challenge enforcement of a judgment against community property in Arizona. LaJunta did not appeal, however, the denial of her motion to intervene and cannot now contest that denial. Her appearance waived any right to notice. She did not move to quash a writ of execution. Her motion for relief from judgment presented no cognizable ground for relief. Neither in her motion in district court nor in this appeal has she presented any reason why the community property should not be subject to the judgment debt, except for the technical one, rejected above, that she

---

**21.** The community is liable for the intentional torts of one spouse if the intent and purpose of the activity was to benefit the community. *Rodgers v. Bryan,* 82 Ariz. 143, 309 P.2d 773, 776–77 (1957).

**22.** *Alberta Securities Comm'n v. Ryckman,* 200 Ariz. 540, 30 P.3d 121, 129 (2001).

**23.** *Id.* at 129–30.

was not named in the complaint filed in federal court in Indiana. LaJunta therefore cannot be heard to complain that she has been denied an opportunity to be heard.

### Conclusion

The order of the District Court for the District of Arizona denying the motion for relief from judgment is

AFFIRMED.